UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: PERSON OR BODY OF COLTON BAGOLA, TO CONSIST OF BUCCAL SWABS. | Case No. 5:20-mj-06<br><br>**FILED UNDER SEAL**<br>**REDACTED**<br>AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT |

STATE OF SOUTH DAKOTA   )
                         )
COUNTY OF PENNINGTON    )

I, Matt Weber, Special Agent of the Federal Bureau of Investigation ("FBI"), being duly sworn, deposes and states under penalty of perjury that the following is true to the best of my information, knowledge and belief.

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI), and I am assigned to the Rapid City Resident Agency, Rapid City, South Dakota. I have approximately nine years of law enforcement experience with the FBI as a Special Agent. During that time, I have investigated federal crimes occurring within Indian country, including violations of 18 U.S.C. §§ 1111(a) and 1153, Second Degree Murder, and 18 U.S.C. §§ 3 and 1153, Accessory after the Fact.

2. The information set forth below is based upon my knowledge of an investigation conducted by the FBI and the investigation of other law enforcement agents and officers. I have not included each and every fact obtained pursuant to

this investigation, but have set forth those facts that I believe are essential to establish the necessary probable cause for the issuance of the search warrant.

3. I affirm that I am an "investigative or law enforcement officer" within the meaning of 18 U.S.C. § 2510(7), and authorized by law to conduct investigations and make arrests for offenses in Titles 8, 18 and 21 of the United States Code. I am a "Federal law enforcement officer" within the meaning of Fed. R. Crim. P. 41(a)(2)(C) and (b).

4. I make this affidavit in support of an application for a search warrant for buccal swabs of the person of Colton Bagola.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

**FACTS IN SUPPORT OF PROBABLE CAUSE**

6. On December 17, 2019, at approximately 3:05AM, Tasheena Jones called the Oglala Sioux Tribe Department of Public Safety Dispatch (OST DPS) to report a shooting incident in North Ridge Housing, Pine Ridge, SD. Jones hung up before an exact location could be gathered. At approximately 3:39 AM, your affiant learned from a review of OST DPS Dispatch records that a female, Casandra Goings, called to report Sloane Bull Bear was shot at Bill Reddy's residence, ███████████████, North Ridge Housing, Pine Ridge, SD.

2

7. OST DPS law enforcement officers arrived on scene and found the victim, Sloane Bull Bear, Date of Birth ▬▬, deceased on the southwest exterior of the residence. On December 18, 2019, your affiant attended the autopsy of Bull Bear, which was conducted by Forensic Pathologist Dr. Donald Habbe. The cause of death was from a gunshot wound to the back of his head. Your affiant learned from Dr. Habbe that the wound contained stippling, meaning that the firearm was in very close proximity to the back of Bull Bear's head before discharging.

8. Your affiant learned that SA Thayer interviewed a witness, Casandra Goings, on December 17, 2019. FBI SA Kevin Seymore interview Goings later on the morning of December 17, 2019, and your affiant interviewed Goings on December 18, 2019. Your affiant learned from Goings that Bull Bear contacted her via Facebook Messenger sometime prior to the evening of December 16, 2019. After Bull Bear contacted Goings, the pair traveled to Pine Ridge and went to Billy Reddy's residence on the evening of December 16 and morning of December 17, 2019.

9. Your affiant learned from Goings that she and Bull Bear arrived at ▬▬ North Ridge Housing shortly after midnight on December 17, 2019. Bull Bear and Goings sat at the kitchen table next to Billy Reddy and Ben Freeman. According to Goings, within 5-10 minutes after sitting at the kitchen table, Colton Bagola and an unknown male walked into the residence. Goings described the unknown male as a "cowboy." Your affiant learned that Ben

3

Freeman later identified the cowboy as Jesse Buckman. Your affiant learned from SA Seymore that Goings told him that Bagola arrived while she was outside and that she and Bagola walked into the residence at about the same time.

10. Your affiant is aware that Goings told SA Thayer that while inside, her chair broke,[1] causing her to move to the center of the room. Goings said that Bagola kept staring at her while the group was in the kitchen. Your affiant learned from SA Thayer that Goings told him that they were drinking at the residence. Goings said that the group was talking about "haircuts," and that Bull Bear asked Goings if she was ready to leave. Your affiant learned from Goings that she and Bull Bear got up to exit the residence through the southwest door. Goings told your affiant that she heard a pop as she was leaving the residence, and that the next thing she saw was Bull Bear on the ground, "snoring." Goings told your affiant that she left the residence and went to Tasheena Jones' residence, along with Reddy and Thelma Ponds. Your affiant learned from Goings that Reddy drove the threesome to Jones' residence. Your affiant is aware that Goings told SA Thayer that she saw Ben Freeman and Colton Bagola running down the street away from Billy Reddy's residence. At Jones' residence, Goings spoke with Reddy and Ponds. Goings said that Billy told her that Colton told Reddy that he (Bagola) was "wanting to kill somebody." Your affiant learned from SA Thayer that Colton told Billy that he had a ".38" (caliber handgun). Your

---

[1] Your affiant learned from a review of the audio interview with SA Thayer that Goings stated at different times that the chair broke and almost broke.

affiant is also aware that Goings told SA Thayer she did not know if Bull Bear had a gun, but he mentioned that they should "let some off," a term your affiant believes is a reference to shooting.

11. Your affiant is aware, according to Goings, that she called 911 at approximately 1:28 AM and that the called failed. Goings also told your affiant that she called back later and spoke with law enforcement upon their arrival. Your affiant is aware that OST DPS records show Goings calling at 3:39 AM, approximately 2 hours after she first attempted to call 911. Your affiant asked Goings why she waited 2 hours from the time the shooting took place until she called 911 again. Goings told your affiant that Ponds and Freeman were scrambling around looking for their things. Your affiant asked Goings if they were gathering their "dope," to which Goings responded that she did not see the dope, but believed that was possible.

12. Your affiant learned that SA Thayer entered the residence to conduct a protective sweep of the residence upon his arrival to ▮▮▮▮▮▮. After your affiant's arrival on scene, your affiant obtained a search warrant of the residence. Your affiant observed blood in the kitchen and a blood trail from the kitchen and continuing out towards the south side of the residence. Your affiant also saw a broken chair near the door, next to Bull Bear's legs. (Bull Bear's head, chest and left leg were outside the residence and his right leg was inside the residence. Bull Bear's left shoe was on his foot and his right shoe was off and next to his right foot inside the house.). Your affiant observed what appeared to be a blood

5

trail in the kitchen and leading towards the living room of the residence. Your affiant also observed various bottles on the table in the kitchen. Your affiant collected multiple blood swabs from the floor of the residence, cigarette butts from the interior and exterior of the residence, two plastic bottles. Your affiant believes that this evidence may contain DNA evidence and can identify the individuals present at ▉ North Ridge Housing.

13. On December 20, 2019, your affiant learned that Billy Reddy had been arrested by the OST DPS and was in custody at the Justice Center in Pine Ridge. Your affiant interviewed Reddy that same day. Reddy stated that Bagola shot Bull Bear at ▉ North Ridge Housing. Reddy told your affiant that Bagola had arrived at ▉ prior to Bull Bear arriving and that Bagola pulled out a silver revolver and placed it on the table. According to Reddy, Bagola was acting weird and stated he "needed to take a soul." Reddy stated that Bagola said that it was going to be either, Scud Martin (a/k/a Dale Martin Junior), Ben Freeman, Reddy or himself (Bagola). Bagola then left and returned after Bull Bear and Goings arrived at ▉. According to Reddy, Bagola and a "cowboy" type guy showed up. Your affiant learned that Bull Bear got up to leave and that Bagola "whipped" out a gun and shot Bull Bear. Your affiant learned that Reddy believed the bullet missed Bull Bear, but that when Bull Bear slumped over and started bleeding, that he then believed Bull Bear had been shot. Your affiant learned that Goings drove Bull Bear's white car to Oglala, SD, where they attempted to make a 911 call to police. The call would not go through,

so they turned around and went to Tasheena Jones' residence in Pine Ridge. Your affiant learned that Reddy told him that Goings then left and called 911.

14. Your affiant interviewed Bagola on December 20, 2019. Bagola denied being at ▇▇▇▇ during the time Bull Bear was shot. Bagola also denied knowing who Bull Bear was and stated that he only knew a female named Sloane. Bagola said he was set up by the

15. On December 20, 2019, your affiant interviewed Ben Freeman. Freeman told your affiant that he was at ▇▇▇▇ during the homicide. Your affiant learned that Freeman had his head down during the time Bull Bear got up to leave, but that he heard the gun go off and saw Bull Bear on the ground following the shooting. Freeman told your affiant that after the shooting he saw Bagola take off running and that Bagola had a gun in his hand. Your affiant learned that Freeman took off to the "old folks" home and waited there until an unknown time when he eventually went to his girlfriend's house. Your affiant learned that Freeman told him that Bagola often pulls out the silver gun and play with it. Freeman identified the "cowboy" as Jesse Buckman.

16. Based upon your affiant's training and experience, your affiant is aware that evidence in the form of deoxyribonucleic acid is contained in the head hair, skin, semen, blood, and saliva in human bodies. Head hair, skin, semen, blood and other substances can be left behind by individuals who come into contact with items left at a crime scene. The head hairs, saliva, blood and other substances can be tested for DNA.

17. Based on your affiant's training and experience, your affiant is aware that at least two buccal swabs for saliva, from inside the cheek, are needed in order for a laboratory to perform an accurate comparison to the DNA that may be identified on evidence collected from the scene.

18. Your affiant is aware that Bagola is an enrolled member of the Oglala Sioux Tribe and that the location where the homicide occurred, Pine Ridge, SD, is within the exterior boundaries of the Pine Ridge Reservation.

### REQUEST/JUSTIFICATION ORDER TO SEAL

19. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed in that the search warrant is part of an investigation. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their disclosure may seriously jeopardize the investigation.

### CONCLUSION

20. Based on the foregoing, I request that the Court issue the proposed search warrant.

21. Based on the foregoing, I submit there is probable cause to believe that the buccal swabs taken from Colton Bagola can be used to determine whether Bagola's DNA is at the scene of the crime. I submit there is probable cause to believe violations of 18 U.S.C. §§ 1111(a) and 1153, Second Degree Murder, and 18 U.S.C. §§ 3 and 1153, Accessory after the Fact, have occurred

and I request a search warrant be issued authorizing the search and seizure of buccal swabs from the body or person of Colton Bagola.

_____
Matt Weber, Special Agent
Federal Bureau of Investigation

Sworn to before me and: ☒ signed in my presence.
☐ submitted, attested to, and acknowledged by reliable electronic means.

This 6th day of January, 2020.

_____
Daneta Wollmann
United States Magistrate Judge

# ATTACHMENT A

## Items to Be Searched

Person or body of Colton Bagola, to consist of buccal swabs.

# UNITED STATES DISTRICT COURT
for the
District of South Dakota

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

PERSON OR BODY OF COLTON BAGOLA, TO CONSIST OF BUCCAL SWABS

Case No. 5:20-mj-06

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Person or body of Colton Bagola, to consist of buccal swabs, as further described in Attachment A, which is attached to and incorporated in this Application and Affidavit.

located in the _____ District of South Dakota, there is now concealed *(identify the person or describe the property to be seized)*:

Person or body of Colton Bagola, to consist of buccal swabs, as further described in Attachment A, which is attached to and incorporated in this Application and Affidavit.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1111(a) and 1153 | Second Degree Murder |
| 18 U.S.C. §§ 3 and 1153 | Accessory after the Fact |

The application is based on these facts:

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

FBI SA Matt Weber
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1-6-2020

*Judge's signature*

City and state: Rapid City, SD

Daneta Wollmann, U.S. Magistrate Judge
*Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
District of South Dakota

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. 5:20-mj-06
)
PERSON OR BODY OF COLTON BAGOLA, TO )
CONSIST OF BUCCAL SWABS )
)

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of ___South Dakota___
*(identify the person or describe the property to be searched and give its location)*:

Person or body of Colton Bagola, to consist of buccal swabs, as further described in Attachment A, which is attached to and incorporated in this Application and Affidavit.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Evidence of a crime of Second Degree Murder, in violation of 18 U.S.C. §§ 1111(a) and 1153, and Accessory after the Fact, in violation of 18 U.S.C. §§ 3 and 1153, as outlined in the affidavit ant Attachment A in support of the search warrant, which are incorporated herein by this reference.

I find that the affidavit, or any recorded testimony, establishes probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before ___January 6, 2020___ *(not to exceed 14 days)*
☒ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to ___Daneta Wollmann___.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for ____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: ___1-6-2020  3:50pm___       ___[signature]___
                                                   *Judge's signature*

City and state:   ___Rapid City, SD___      Daneta Wollmann, U.S. Magistrate Judge
                                                   *Printed name and title*

cc: AUSA Poppen
    JAZ

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

# Return

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| | | |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

# Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
Executing officer's signature

_____
Printed name and title